## AFFIDAVIT

I, Benjamin I. Cohen, being sworn, depose and state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. I have served in this capacity for approximately seven years. My responsibilities as an ATF Special Agent include the investigation of federal firearms violations and violent crimes. During my service as an ATF Agent, I have been involved in numerous investigations involving firearms and narcotics offenses. Prior to my service as an ATF Special Agent, I was a Trooper with the Vermont State Police for approximately six months. Prior to my employment with the Vermont State Police, I was a police officer with the Montpelier Police Department for approximately five years.

2. This affidavit is submitted to show probable cause to believe that on or about December 26, 2014, KENNETH HOLLAND, an individual who had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, possessed a firearm in or affecting interstate commerce, in violation of 18 U.S.C. § 922(g)(1). The facts in this affidavit come from my personal observations and knowledge, my training and experience, as well as information received from other law enforcement personnel involved in this investigation. This affidavit is intended to show merely that there is probable cause for the offense charged and does not set forth all of my knowledge about this matter.

3. The information in paragraphs 3-5 is based on my consultation with Barre Town Police Officer Jacob Frey and review of an affidavit he prepared in this matter. According to the affidavit, at approximately 2:15 a.m. on December 26, 2014, Officer Frey was on patrol on Main Street in Barre City, Vermont. Officer Frey observed a vehicle traveling westbound on South Main Street in Barre City. The speed limit on that portion of South Main Street is 25 m.p.h. Using the radar system in his police cruiser, Officer Frey confirmed that the vehicle was traveling at approximately 41 m.p.h. Officer Frey had earlier received a description of a vehicle associated with a report of theft. The complainant in that theft matter was Michelle Bailey of Barre Town, Vermont. Barre Town Police Officer Karie Tucker was the law enforcement officer who had received the theft complaint from Bailey. Officer Frey believed that the vehicle he observed on South Main Street matched the description of the vehicle associated with the theft.

4. Officer Frey observed the vehicle pull into the parking lot of the Cumberland Farms on North Main Street in Barre City. Officer Frey requested a registration check of the vehicle's license plate. The registration check indicated that there were no records associated with the vehicle. Officer Frey pulled his cruiser into the parking lot next to the vehicle and exited his cruiser. The operator, subsequently identified as KENNETH HOLLAND, was the only person in the vehicle.

5. HOLLAND rolled down the passenger side window and spoke to Officer Frey. HOLLAND stated that the vehicle had been registered on December 24, 2014, and produced paperwork indicating that the vehicle was registered to a Darin Duprey, who had acquired the vehicle from Kevin Scott. HOLLAND identified himself as Kevin Scott with a date of birth of December 13, 1964. HOLLAND also stated that he did not have any identification on him. HOLLAND also admitted that he did not have a driver's license. HOLLAND stated that his girlfriend, Michelle Bailey, could come to pick him up. Officer Frey then contacted Officer Tucker to respond to the scene. A records check by Officer Frey revealed a Kevin Scott, but with a date of birth different from the date HOLLAND had provided.

6. The information contained in paragraphs 6-10 is based upon my review of an affidavit prepared by Officer Tucker in this matter. Upon arriving at the Cumberland Farms parking lot where Officer Frey and HOLLAND were, Officer Tucker stopped her vehicle behind the HOLLAND's vehicle. Officer Tucker approached the passenger side of the vehicle and observed that HOLLAND appeared very nervous and "extremely jumpy." Officer Tucker also smelled marijuana emanating from the vehicle. When Officer Tucker asked HOLLAND if there was anything in the vehicle that she should know about, HOLLAND looked to the back of the vehicle, but did not indicate that there was anything in the vehicle. HOLLAND also advised that he had approximately $2,000 in the glove box. HOLLAND indicated that he was on disability and the money was his to be used for a hotel.

7. Officer Tucker received HOLLAND's consent to search the vehicle. In the front seat of the vehicle, Officer Tucker located what appeared to be a book in a plastic bag under the front seat. HOLLAND advised that the book was his Bible. Upon closer inspection, Officer Tucker determined that the book opened and there was a small safe inside. As the search continued, HOLLAND became more agitated and nervous. HOLLAND grabbed the safe from Officer Tucker's hands and began to shake it, stating that there was actually a Bible on the inside. HOLLAND indicated that he did not have a key for the safe, but that his roommate did. HOLLAND also advised law enforcement that he liked candy and that there was a "lot of candy" in the vehicle.

8. As the search continued, Officer Tucker found a gold spongy-type material that she believed to be part of a Brillo pad. Based on my training and experience, I know that Brillo material may be used in the process of smoking crack cocaine. When Officer Tucker asked HOLLAND if he knew what the material was, HOLLAND stated that he knew what it was used for, but that he did not smoke crack cocaine. HOLLAND stated that he used the material in connection with his knee.

9. As Officer Tucker continued to search the vehicle, she located a Sour Patch Kids candy box containing a small silver handgun. At that point, HOLLAND denied knowing that

the gun was there and denied that the gun was his. HOLLAND then turned around, put his hands behind his back, and stated, "Arrest me." As Officer Tucker began to put handcuffs on HOLLAND, HOLLAND tried to run, causing a physical altercation with Officer Tucker. Officer Frey was able to subdue HOLLAND and secure handcuffs on him.

10. After HOLLAND was taken into custody, HOLLAND admitted that his name was actually KENNETH HOLLAND with a date of birth of December 13, 1965. Subsequent to HOLLAND's being taken into custody, Michelle Bailey arrived at the scene and indicated that she was there to give HOLLAND a ride. Bailey also advised law enforcement that HOLLAND sells crack cocaine.

11. Based on my review of HOLLAND's criminal record, I have determined that HOLLAND has a New York State felony conviction for Criminal Sale of a Controlled Substance in the Third Degree. Under New York law, this felony is punishable by a term of imprisonment in excess of one year. HOLLAND received a sentence of one year.

12. The firearm recovered from the vehicle HOLLAND was driving is a Jennings (by Calwestco) Model J-22, .22 caliber pistol, serial number 388252. Based on my consultation with ATF Special Agent Scott Murray, an expert in the interstate nexus of firearms, I know that this firearm was not manufactured in the State of Vermont, and therefore by its presence in Vermont on December 26, 2014, the firearm traveled in interstate commerce prior to its recovery from the vehicle HOLLAND was driving.

13. Based on the foregoing, I believe there is probable cause to believe that on or about December 26, 2014, KENNETH HOLLAND, an individual who had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, possessed a firearm in or affecting interstate commerce, in violation of 18 U.S.C. § 922(g)(1).

Dated at Burlington, in the District of Vermont, this 26 day of December, 2014.

Benjamin I. Cohen
ATF Special Agent

Sworn to and subscribed before me this ___ day of December, 2014.

John M. Conroy
United States Magistrate Judge